UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-CV-00572-KDB-SCR

STARR INDEMNITY & LIABILITY
COMPANY AND PCS WIRELESS
LLC,

        **Plaintiffs,**

   v.

RXO CAPACITY SOLUTIONS, LLC
F/K/A XPO LOGISTICS, LLC,

        **Defendant.**

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on Defendant RXO Capacity Solutions, LLC f/k/a XPO Logistics, LLC's Motion to Dismiss Plaintiffs' Amended Complaint (the "Motion") (Doc. No. 13) and the parties' briefs and exhibits (Doc. Nos. 14, 15 & 16).

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion be granted in part and denied in part.

## I.     BACKGROUND

Accepting the facts in Plaintiffs' First Amended Complaint as true for purposes of reviewing the Motion, Plaintiff Starr Indemnity & Liability Company ("Starr") is an insurance

company and PCS Wireless LLC ("PCS") is a wireless device reseller (together, "Plaintiffs"). (Doc. No. 7 ¶¶ 2, 4).

In August 2022, PCS purchased 54,000 wireless devices for approximately $11,500,000. Id. ¶ 15. PCS contacted RXO Capacity Solutions, LLC f/k/a XPO Logistics, LLC (hereinafter, "Defendant") about transporting the wireless devices from Texas to Hialeah, Florida, by motor vehicle. Id. ¶ 17. Defendant subcontracted with or otherwise arranged for a third-party, Wizard Equipment Corp. ("Wizard Equipment"), to transport the wireless devices from Texas to Florida. Id. ¶¶ 50-52, 62-67, 74-79, 91-95. All wireless devices were loaded into a single trailer for transportation from Texas, and the shipment "was in good order and condition when tendered for carriage to the intended destination." Id. ¶¶ 18-19. A clean bill of lading (the "Bill of Lading") was issued for the shipment identifying PCS as the cosignee. Id. ¶¶ 20-22. However, sometime on August 14 or 15, 2022, the shipment of wireless devices was stolen from a truck yard in Tampa, Florida. Id. ¶ 23. The theft of the wireless devices was reported on August 15, 2022. Id. ¶ 24. On August 17, 2022, PCS notified Defendant of the loss of the shipment. Id. ¶ 25. PCS submitted an insurance claim to Starr for the loss of the shipment, and Starr paid $5,000,000 on the insurance claim. Id. ¶¶ 27-28. Plaintiffs claim losses of at least $11,500,000. Id. ¶¶ 26, 31. PCS asserts losses in an uninsured loss amount of $6,500,000. Id. ¶ 30. Starr claims by virtue of the $5,000,000 insurance payment to PCS that it is equitably and/or contractually subrogated to the rights and claims of PCS up to the amount of its payment. Id. ¶ 29.

Plaintiffs originally filed a complaint in Mecklenburg County Superior Court, and Defendant removed the action to this Court. (Doc. No. 1). Plaintiffs then filed their First Amended Complaint pleading six causes of action (referred to herein as the "Complaint"). (Doc. No. 7). Plaintiffs first assert a claim against Defendant as "carrier" under the Carmack Amendment to the

Interstate Commerce Act (the "Carmack Amendment"), 49 U.S.C. § 14706.  Id. ¶¶ 33, 71-73, 88-90.  Plaintiffs plead two causes of action in the alternative to the Carmack Amendment claim: breach of contract and vicarious liability.  Id. ¶¶ 42-68.

As to the shipment, Defendant contends it acted as a "broker," not as a "carrier." Consequently, Plaintiffs plead in the alternative two causes of action to the extent Defendant acted as a broker instead of a carrier: negligence and breach of contract.  Id. ¶¶ 69-98 Plaintiffs also bring an alternative claim for bailment.  Id. ¶¶ 99-108.  Defendant now seeks dismissal of Plaintiffs' First Amended Complaint.  (Doc. No. 13).

## II. STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  The plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563.  A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard.  Id.  First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Id.  "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark [] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court assumes their truth and then determines whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Neitzke v. Williams, 490 U.S. 319, 326 (1989). Where "it is clear that no relief could be granted under any set of facts that could be prove[n] consistent with the allegations[,] . . . a claim must be dismissed." Id. at 327 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

### III.    DISCUSSION

As an initial matter, Defendant argues that Plaintiffs improperly plead claims and factual allegations in the alternative. This argument is unavailing. Under Federal Rule of Civil Procedure

8(d),

> (2) Alternative Statements of a Claim or Defense. A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

> (3) Inconsistent Claims or Defenses. A party may state as many separate claims or defenses as it has, regardless of consistency.

Fed. R. Civ. P. 8(d). As such, relying on Rule 8, courts routinely observe that pleading alternative theories is an accepted practice. *Hayes v. Prudential Ins. Co. of Am.*, 60 F.4th 848, 855 (4th Cir. 2023); *Grevera v. Microsoft Corp.*, No. 3:12–cv–00261–MOC–DSC, 2013 WL 1347859, *2 (W.D.N.C. Apr. 3, 2013) ("That plaintiff may have pled additional facts or facts in the alternative that may be antithetical to a claim is of no consequence, as the Federal Rules of Civil Procedure envision pleading in the alternative." (citing Fed. R. Civ. P. 8(d)(3))); *Menerick v. Salem Heritage, LLC*, No. 1:23CV00010, 2023 WL 3818391, at *3 (W.D. Va. June 5, 2023) ("In a federal pleading, a party can plead alternative theories of recovery set out in separate counts and based on alternative facts even if inconsistent and even if the party may not prevail on the alternative theories."); *Guerrero v. Bank of Am. N.A.*, No. 3:21-cv-00333-RJC-DSC, 2023 WL 2712484 (W.D.N.C. Mar. 30, 2023) (concluding that the plaintiff may assert an alternative claim of unjust enrichment to a breach of contract claim when the contract itself is in dispute). Plaintiffs bring alternative claims for relief based on different legal theories because of Defendant's assertion that it acted as a broker rather than a carrier with respect to the shipment, which as discussed below can be a blurry line. In any event, Plaintiffs' claims do not fail because asserting alternative claims is permissible under the Federal Rules of Civil Procedure.

### A. Plaintiffs' Carmack Amendment Claim (Count I)

Defendant contends that it acted as a broker, and not a carrier, with respect to the shipment,

and therefore, Plaintiffs' claim under the Carmack Amendment should be dismissed. (Doc. Nos. 14, 16).

The Carmack Amendment "creates 'a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading.'" 5K Logistics, Inc. v. Daily Exp., Inc., 659 F.3d 331, 334-35 (4th Cir. 2011) (quoting Shao v. Link Cargo (Taiwan) Ltd., 986 F.2d 700, 704 (4th Cir.1993)). The statute provides:

> **(1) Motor carriers and freight forwarders.--**A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation . . . . That carrier and any other carrier that delivers the property and is providing transportation or service . . . are liable to the person entitled to recover under the receipt or bill of lading . . . .
>
> **(2) Freight forwarder.--**A freight forwarder is both the receiving and delivering carrier. When a freight forwarder provides service and uses a motor carrier providing transportation . . . to receive property from a consignor, the motor carrier may execute the bill of lading or shipping receipt for the freight forwarder with its consent. With the consent of the freight forwarder, a motor carrier may deliver property for a freight forwarder on the freight forwarder's bill of lading, freight bill, or shipping receipt to the consignee named in it, and receipt for the property may be made on the freight forwarder's delivery receipt.

49 U.S.C. § 14706(a). To state a claim under Carmack, Plaintiffs "must allege: (1) receipt of the goods by the defendant carrier in good order and condition; (2) the arrival of the shipment at its destination in a damaged condition or the failure of the shipment to arrive at all; and (3) the amount of damages." B&W Fiber Glass, Inc. v. Kerns Trucking, Inc., No. 1:16-CV-00306-MR-DLH, 2017 WL 3741977, at *2 (W.D.N.C. Aug. 30, 2017) (citing Mo. Pac. R.R. Co. v. Elmore & Stahl, 377 U.S. 134, 138 (1964)); Saacke N. Am., LLC v. Landstar Carrier Srvs., Inc., No. 5:11CV107–RLV, 2013 WL 7121197, at *5 (W.D.N.C. Dec. 19, 2013).

"The Carmack Amendment's language makes clear that it [applies to carriers and] does not apply to brokers, so Carmack Amendment cases often . . . hinge on the analysis of whether one of the parties was a broker or a carrier." Ortiz v. Ben Strong Trucking, Inc., 624 F. Supp. 3d 567,

579-80 n.4 (D. Md. 2022) (citing TRG Holdings, LLC v. Leckner, No. 1:06-cv-411-JCC, 2006 WL 2076768 at *1-2 (E.D. Va. July 20, 2006)); AIG Europe (Netherlands), N.V. v. UPS Supply Chain Sols., Inc., 765 F. Supp. 2d 472, 482-83 (S.D.N.Y. 2011) ("As a threshold matter, the 'Carmack amendment imposes liability on 'carriers' but not on 'brokers,' as those terms are defined by the statute,' and thus 'it is critical to determine whether a defendant was acting as a carrier or as a broker in relation to the particular shipment that was damaged.'" (quoting AIOI Ins. Co. v. Timely Integrated, Inc., No. 08 Civ. 1479, 2009 WL 2474072, at *2 (S.D.N.Y. Aug. 12, 2009)).  Under the statute, a carrier includes a motor carrier, a water carrier, and a freight forwarder.  49 U.S.C. § 13102(3).

> The term "freight forwarder" means a person holding itself out to the general public (other than as a pipeline, rail, motor, or water carrier) to provide transportation of property for compensation and in the ordinary course of its business--
>
> > (A) assembles and consolidates, or provides for assembling and consolidating, shipments and performs or provides for break-bulk and distribution operations of the shipments;
> >
> > (B) assumes responsibility for the transportation from the place of receipt to the place of destination; and
> >
> > (C) uses for any part of the transportation a carrier subject to jurisdiction under this subtitle. . . . .
>
> The term "motor carrier" means a person providing motor vehicle transportation for compensation. . . .
>
> The term "water carrier" means a person providing water transportation for compensation.

49 U.S.C. §§ 13102(8), (14), (26).  Transportation includes both the actual movement of property and services related to that movement, including arranging for movement of property.  49 U.S.C. § 13102(23).  A broker is "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by

solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2). A transportation entity may have authority to operate as both a broker and a carrier, but "cannot be both in the same transaction." Ortiz, 624 F. Supp.3d at 579 (citing Ripley v. Long Distance Relocation Srvs., LLC, Civil No. CCB-19-373, 2019 WL 5538343, at *5 n.8 (D. Md. Oct. 25, 2019)); 5K Logistics, Inc., 659 F.3d at 335 ("[T]here is no overlap in the statute between 'carriers' and 'brokers.'" (quoting 49 U.S.C. § 13102(2))).

Carriers "encompass[] entities that perform services other than physical transportation." Tryg Ins. v. C.H. Robinson Worldwide, Inc., 767 F. App'x 284, 286 (3d Cir. 2019). Indeed, a carrier does not become a broker for purposes of the Carmack Amendment where "it arranges the transportation of shipments that it is authorized to transport and that it has legally bound itself to transport." Tryg Ins. v. C.H. Robinson Worldwide, Inc., No. 15–5343 (MAS) (TJB), 2017 WL 5725057, at *6 (D.N.J. Nov. 28, 2017), aff'd 767 Fed. App'x 284. In other words, "[i]f an entity accepts responsibility for ensuring the delivery of goods, then that entity qualifies as a carrier regardless of whether it conducted the physical transportation." Tryg Ins., 767 Fed. App'x at 286.

In sum, "the key question" is whether the entity accepted legal responsibility to transport the shipment or merely agreed to locate and hire a third party to transport the goods.[1] Auray v. Delivery by Delivery, Inc., No. 6:23-03155-HMH, 2023 WL 5651868, at *2 (D.S.C. Aug. 31, 2023) (quoting Essex, Ins. Co. v. Barrett Moving & Storage, Inc., 885 F.3d 1292, 1300-01 (11th Cir. 2018)); Tryg Ins., 767 Fed. App'x at 286-87 ("[T]he crucial question is whether the party has legally bound itself to transport goods by accepting responsibility for ensuring the delivery of the

---

[1] The Department of Transportation regulations similarly provide that motor carriers are not brokers "when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport." 49 C.F.R. § 371.2(a).

goods.").  While the Fourth Circuit has not delineated a test for determining whether an entity is a

carrier or broker, other courts consider a number of factors when determining an entity's status.

For example, some courts consider:

> (1) whether the entity promised to personally perform the transport and therefore legally bound itself to transport; (2) the type of services the entity offers; (3) whether the entity held itself out to the public as the actual transporter of goods; and (4) whether the entity's *only* role was to secure a third party to ship plaintiff's goods.

Tryg Ins., 2017 WL 5725057, at *6–7 (emphasis in original).  The Eleventh Circuit observed that

a written document explaining an entity's role with respect a particular transaction can make the

determination less difficult, but

> [w]here no such writing exists, the question will depend on how the party held itself out to the world, the nature of the party's communications and prior dealings with the shipper, and the parties' understanding as to who would assume responsibility for the delivery of the shipment in question. In any case, the operative inquiry is this: pursuant to the parties' agreement, with whom did the shipper entrust the cargo?

Essex Ins. Co., 885 F.3d at 1302; see, e.g. Saacke N. Am., LLC, 2013 WL 7121197, at *7

("Whether a company is a broker or a carrier / freight forwarder is not determined by how it labels

itself, but by how it holds itself out to the world and its relationship to the shipper."); Lumbermens

Mut. Cas. Co. v. GES Exposition Srvs., Inc., 303 F.Supp.2d 920 (N.D. Ill. 2003).  Other courts

also look to facts such as "'who arranged the details of the transport process' such as handling the

route, packing the product, coordinating the travel and release of goods, whether the party acted

as a go-between or served as a central point of communication for both the carrier and the shipper,

and if the shipper knew who exactly was carrying the load."  Allen v. Foxway Transp., Inc., No.

4:21-CV-00156, 2023 WL 8478015, at *8 (M.D. Pa. Dec. 7, 2023) (quoting Ciotola v. Star Transp.

& Trucking, LLC, 481 F. Supp. 3d 375, 392 (M.D. Pa. 2020)) (analyzing whether entity was a

broker or carrier for purposes of determining vicarious liability rather than Carmack Amendment liability).

"[T]he difference between a broker and a carrier is often 'a blurry one.'" Auray, 2023 WL 5651868, at *2 (quoting Neb. Turkey Growers Coop. Assoc'n v. ATS Logistics Srvs., Inc., No. 4:05CV3060, 2005 WL 3118008, at *4 (D. Neb. Nov. 22, 2005)). To that end, the inquiry into whether an entity is a carrier or broker "is inherently fact-intensive." Id. at *3 (quoting Nipponkoa Ins. Co. Ltd. V. C.H. Robinson Worldwide, Inc., No. 09 Civ. 2365(PGG), 2011 WL 671747, at *5 (S.D.N.Y. Feb. 18, 2011)).

Here, taking the factual allegations in the Complaint as true, Plaintiffs' Complaint plausibly states a claim against Defendant as a carrier under the Carmack Amendment. B&W Fiber Glass, Inc., 2017 WL 3741977, at *2. The Complaint alleges that: PCS contacted Defendant, a carrier, about transporting the wireless devices from Texas to Hialeah, Florida; that the wireless devices were loaded into a single trailer for transportation from Texas; the shipment was in good order and condition when tendered for carriage to the intended destination; and a clean Bill of Lading was issued. (Doc. No. 7 ¶¶ 17-22, 33). The shipment never arrived because it was stolen from a truck yard in Tampa, Florida, causing no less than $11,500,000 in damages. Id. ¶ 23. PCS notified Defendant of the loss of the shipment. Id. ¶ 25.

Defendant earnestly points to the Bill of Lading[2] to support its argument that it was only a broker because Wizard Equipment, rather than Defendant, is listed as the "Carrier" on the Bill of

---

[2] Plaintiffs provided the Bill of Lading with their response in opposition to the Motion to Dismiss. (Doc. No. 14 at 10-12; Doc. No. 15 at 22). The Court may consider the Bill of Lading in its review of the Motion to Dismiss. In its review of a Rule 12(b)(6) motion to dismiss, this Court "may consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic" without converting the motion into a motion for summary judgment. Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007). "A document is 'integral' when its 'very existence, and not the mere

Lading. (Doc. No. 15 at 22). However, the Bill of Lading alone does not end the fact-intensive inquiry into whether an entity is a broker or carrier for purposes of the Carmack Amendment. Mays v. Uber Freight, LLC, No. 5:23-CV-00073, 2024 WL 332917, at *3 (W.D.N.C. Jan. 29, 2024); Ortiz, 624 F. Supp.3d at 581 ("[T]he identification of Cowan as the 'carrier' on the bill of lading does not prove that Cowan was in fact this transaction's carrier and had merely contracted (rather than brokered) the shipment to BST. An erroneous bill of lading prepared by a third party, which identified the defendant as the 'carrier' of the load, could not establish the defendant's carrier status since the defendant played no role in its preparation."); Aqua Gulf Logistics, Inc., No. 3:23-cv-547-MMH-JBT, 2023 WL 7187235, at *4 (M.D. Fla. Nov. 1, 2023) (denying motion to dismiss Carmack Amendment claim despite bill of lading naming entity other than defendant as carrier). In fact, the Bill of Lading here raises factual questions. For example, the Bill of Lading also references a "broker," which is not identified in the document, and notes that such "broker agrees to carry to destination, if on its route, otherwise to deliver to another broker on the route to destination." (Doc. No. 15 at 22). "GXO Logistics" may have signed the Bill of Lading as the "Shipper", although the handwritten script is difficult to decipher, the record would need to be developed as to GXO's role, if any, *vis-á-vis* Defendant. Id. In short, the Bill of Lading is not solely determinative here and raises additional factual questions not appropriate to resolve at this Motion to Dismiss stage.[3]

---

information it contains, gives rise to the legal rights asserted.'" Mays, 2024 WL 332917, at *2 n.4 (quoting Faulkenberry v. U.S. Dep't of Defense, No. 1:22-cv-1150-JMC, 2023 WL 3074639, at *6 (D. Md. Apr. 25, 2023)). A bill of lading is integral to a Carmack Amendment claim. Brentzel v. Fairfax Transfer & Storage, Inc., No. 21-1025, 2021 WL 6138286, at *2 (4th Cir. Dec. 29, 2021).

[3] At this stage, the undersigned concludes only that Plaintiffs have stated a claim, but does not make any findings as to the role of Defendant in the shipment. Accordingly, Defendant may renew its arguments, if appropriate, following the conclusion of discovery.

Moreover, although Defendant argues it merely arranged for transport, and points to Wizard Equipment as the entity that actually transported the wireless devices, under the statutory definition, caselaw, and implementing regulations, an entity can be a carrier under the Carmack Amendment even if did not physically transport the wireless devices, which Plaintiffs allege here. Tryg Ins., 767 Fed. App'x at 286. Under the law, a carrier does not become a broker simply because it arranges transportation of a shipment if the entity is authorized to transport and accepts legal responsibility for ensuring the delivery of the goods. Id.; Essex Ins. Co., 885 F.3d at 1300-01; Auray, 2023 WL 5651868, at *2; 49 C.F.R. § 371.2(a). Here, PCS alleges that it contacted Defendant about transporting the shipment as a carrier and it notified Defendant of the loss of the shipment.[4] (Doc. No. 7 ¶¶ 17, 25).

The Court agrees with Defendant that the Carmack Amendment is not applicable if Defendant acted as a broker in the transaction. Mays, 2024 WL 332917, at *2-3 (W.D.N.C. Jan. 29, 2024).[5] But, at this early stage, the undersigned concludes that the Complaint alleges sufficient information to support a plausible claim. Factual questions remain, among others, about how Defendant held itself out to the public,[6] the services Defendant offers, and the nature of the parties' communications and prior dealings, which cannot be resolved at this time. Id.

---

[4] Defendant also argues that Plaintiffs do not expressly plead that Defendant was the "carrier" for this shipment. (Doc. No. 14 at 11). A close reading of the Complaint suggests otherwise. In addition to the allegations described above, Plaintiffs allege that "Defendant is a carrier subject to the Carmack Amendment"; "[a] contract of carriage or other contract existed between PCS and Defendant in connection with the shipment"; and "[t]he shipment was in good order and condition when tendered to Defendant for carriage to the intended destination." (Doc. No. 7 at ¶¶ 33-34, 37).

[5] Mays is instructive here, and unlike Mays, Defendant has not pointed to written agreements confirming its role as a broker. Mays, 2024 WL 332917, at *2-3 (considering, among other things, a rate confirmation and written agreement provided by the broker at the motion to dismiss stage showing the relationship between the broker and the carrier).

[6] Defendant provided information on how Wizard Equipment holds itself out to the public at least with respect to how it is registered with the Department of Transportation. (Doc. No. 16-1).

For all of these reasons, the question of whether Defendant acted as a broker or carrier requires further factual development. See, e.g., TRG Holdings, 2006 WL 2076768 at *1-2 (denying motion to dismiss noting "[a]t this stage of the proceedings, when the complaint is to be liberally construed in favor of plaintiff, the Court cannot definitively conclude that Defendant was a motor carrier. The complaint stresses that Defendant arranged for the transportation, and as such he would classify as a broker. Discovery can flesh out the exact nature of Leckner's role, and if necessary, the parties can re-argue the issue with more to contemplate than a pleading"); Auray, 2023 WL 5651868, at *2 (denying motion to dismiss on issue of whether defendant was carrier or broker noting "given these ambiguities, and considering that the carrier/broker inquiry is inherently fact-intensive the court is unable to determine at the motion-to-dismiss stage whether SGT's role in this transaction was limited to that of a broker." (internal quotation marks, citations, and alterations omitted)); Essex Ins. Co., 885 F.3d at 1301 (noting that the determination of whether an entity is a carrier or broker "is necessarily a case specific analysis"); Aqua Gulf Logistics, Inc., 2023 WL 7187235, at *4 (denying motion to dismiss Carmack Amendment claim because factual questions existed as to whether defendant was carrier or broker); Nipponkoa Ins. Co., Ltd., 2011 WL 671747, at *5-8 (observing that defendant's status as broker or carrier could not be determined as a matter of law and noting "it is apparent from the case law that the carrier/broker inquiry is inherently fact-intensive").

---

However, Defendant does not provide this information with respect to itself. Such information is still insufficient to permit the undersigned to render a conclusion, at this early stage, as to Defendant's role. See Saacke N. Am., LLC, 2013 WL 7121197, at *7 ("Landstar makes much of the fact that GES is registered as a transportation broker. As explained herein, this one factor is not determinative of GES's status, particularly given Landstar's concession that GES also holds itself out as a carrier" and ultimately concluding GES was a carrier rather than broker in transaction. (internal citations omitted)).

Considering all of this, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiffs' Carmack Amendment claim (Count I) be <u>denied</u>.

### B. Alternative Common Law Causes of Action

#### 1. <u>Carmack Amendment Preemption Against Defendant as a Carrier (Count II and Count III)</u>

Plaintiffs bring alternative causes of action for breach of contract and vicarious liability against Defendant as an alleged carrier. Defendant argues these claims must be dismissed because they are preempted by the Carmack Amendment. The undersigned agrees. While pleading in the alternative is permissible, these claims against Defendant as a carrier are categorically preempted by the Carmack Amendment, which entirely governs liability against carriers.

The Carmack Amendment "create[s] a national uniform policy regarding the liability of carriers under a bill of lading for goods lost or damaged in shipment." <u>Shao</u>, 986 F.2d at 705-07; <u>German v. Bekins Van Lines, Inc.</u>, No. 319CV00558FDWDSC, 2020 WL 5204046, at *3 (W.D.N.C. Sept. 1, 2020). The Carmack Amendment's "broad scope preempts all state law claims, whether they contradict or supplement Carmack remedies." <u>Taylor v. Mayflower Transit, Inc.</u>, 22 F. Supp. 2d 509, 510-11 (W.D.N.C. 1998) (collecting cases). Consequently, the Carmack Amendment preempts state and common law claims of breach of contract and negligence for goods lost or damaged by a carrier during interstate shipment under a bill of lading. <u>Shao</u>, 986 F.2d at 705-07; <u>Taylor</u>, 22 F. Supp. 2d at 510-11 (concluding Carmack Amendment preempted negligence and unfair and deceptive trade practices claims); <u>German</u>, 2020 WL 5204046, at *4 (holding that plaintiffs' state law claim of breach of contract was preempted by the Carmack Amendment).

Plaintiffs' Complaint asserts state law claims of breach of contract and vicarious liability against Defendant as a carrier in Count II and Count III. Plaintiffs bring both of these claims as "alternative[s] to Count I because Defendant disputes that it is subject to the Carmack

Amendment." (Doc. No. 7 ¶¶ 43, 59). Count II alleges that Defendant breached "[a] contract of carriage or other contract between PCS and Defendant in connection with the shipment" for failing to deliver the goods and unilaterally subcontracting shipment of the goods to a third-party. Id. ¶¶ 42-57. This claim specifically alleges facts that are at the heart of a carrier's role in a transaction. Specifically, Plaintiffs allege that Defendant "had an obligation and duty to deliver the shipment in good order and condition to the intended destination" and "properly and carefully handle, keep and care for the property being transported" and Defendant "breached the contract of carriage or other applicable contract by failing to deliver the shipment to the intended destination." Id. ¶¶ 47-49. Plaintiffs similarly allege in Count III that Defendant breached a contract of carriage and is vicariously liable for its subcontractor's negligence. Id. ¶¶ 43-68.

These claims seek to hold Defendant liable as a carrier under a "contract of carriage or other contract" for goods lost in shipment, and fall squarely within the type of common law claims that courts routinely hold are preempted by the Carmack Amendment. Straley v. Thomas Logistics, LLC, No. 2:10 CV 02, 2010 WL 2231399, *1-2 (W.D.N.C. Mar. 18, 2010), Mem. & R. Adopted, 2010 WL 2231566 (W.D.N.C. June 1, 2010) ("[T]he only possible claim against an interstate motor carrier for loss or damage to goods during or as part of an interstate shipment . . . is a claim under the Carmack Amendment . . . . There is little to no room to argue in this district that the Carmack act has left any rock unturned in the state law arsenal of tort claims, including claims for intentional torts."); Advanced Sterilizer Dev. & Design, Inc. v. Roadway Express, Inc., No. 1:02 CV 285, 2002 WL 31165144, *2 (M.D.N.C. Aug. 21, 2002) ("[B]ecause of the scope and the detail of the Carmack Amendment, the Fourth Circuit has joined numerous other circuits in concluding that the Carmack Amendment 'preempts a shipper's state and common law claims

of breach of contract and negligence for goods lost or damaged by a carrier during interstate shipment under a valid bill of lading.'").

Plaintiffs concede that the Carmack Amendment "ordinarily preempts state and common law claims by a cargo claimant against a carrier." (Doc. No. 15 at 15). However, Plaintiffs argue that it is premature for the Court to determine whether these state law claims are preempted. The Court disagrees. "[A] Rule 12(b)(6) motion 'is also the proper venue by which the Court considers a preemption claim' . . . 'provided the facts necessary to determine the issue clearly appear on the face of the complaint.'" Mays, 2024 WL 332917, at *3 (citing Walker v. Srv. Corp. Int'l, No. 4:10-cv-48, 2011 WL 1370575, at *3 (W.D. Va. Apr. 12, 2011) & Franklin Livestock Inc. v. Boehringer Ingelheim Vetmedica, Inc., 113 F. Supp. 3d 834, 837 (E.D.N.C. 2015)). Plaintiffs' common law breach of contract and vicarious liability claims allege that Defendant is liable for loss of goods being transported under a contract of carriage. Importantly, these claims are preempted regardless of whether the Court ultimately concludes Defendant acted as a broker or carrier because these specific claims rely on Defendant's role as a carrier, which is entirely governed by the Carmack Amendment. Brentzel v. Fairfax Transfer & Storage, Inc., No. 21-1025, 2021 WL 6138286, at *3 (4th Cir. Dec. 29, 2021) ("The Carmack Amendment 'preempts all state or common law remedies available to a shipper against a carrier for loss or damage to interstate shipments.'" (quoting N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc., 89 F.3d 452, 456 (7th Cir. 1996)).[7]

---

[7] As discussed further herein, Plaintiffs' Complaint separately and alternatively brings state law claims against Defendant to the extent its role in the transaction was as a broker rather than a carrier, which are not preempted by the Carmack Amendment. (Doc. No. 7 ¶¶ 70, 84); see also 5K Logistics, Inc., 659 F.3d at 338 ("This cause of action is stated in the alternative to Counts I, II and III because Defendant disputes that it acted act as a carrier with regard to the shipment.").

For these reasons, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiffs' breach of contract claim (Count II) and vicarious liability claim (Count III) against Defendant as a carrier be <u>granted</u>.

2. <u>FAAAA Preemption of "Broker" Claims (Count IV and Count VI)</u>

Plaintiffs bring negligence (Count IV) and bailment (Count VI) claims against Defendant as an alleged broker.  Defendant argues these claims must be dismissed because they are preempted by the Federal Aviation Administration Authorization Act ("FAAAA").  The Court agrees.

The FAAAA expressly preempts state law as follows:

> **(1) General rule.**--Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1); <u>see also</u> 49 U.S.C. § 14501(b)(1); <u>Ye v. GlobalTranz Enterprizes, Inc.</u>, 74 F.4th 453, 457 (7th Cir. 2023); <u>Dan's City Used Cars, Inc. v. Pelkey</u>, 569 U.S. 251, 256-57 (2013).  The statute includes three exceptions for: (1) safety regulations with respect to motor vehicles, (2) intrastate transport of household goods, and (3) certain tow truck operations.  49 U.S.C. § 14501(c)(2).

As relevant here, the first exception, the safety exception, specifically states:

> **(2) Matters not covered.**--Paragraph (1)--
>
> > **(A)** shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization;

49 U.S.C. § 14501(c)(2)(A).  Considering the language of the statute, courts hold that the FAAAA preempts negligence and negligent hiring claims against brokers where the claims relate to the broker's prices, routes, or services.  <u>Mays</u>, 2024 WL 332917, at *3-4; <u>Ye</u>, 74 F.4th at 457-66; <u>Aspen Am. Ins. Co v. Landstar Ranger, Inc.</u>, 65 F.4th 1261, 1265-72 (11th Cir. 2023).  These same courts, in similar contexts, have concluded that negligence and negligent hiring claims are outside the scope of the safety exception to the FAAAA's preemption.  <u>Ye</u>, 74 F.4th at 457-66; <u>Mays</u>, 2024 WL 332917, at *3-4; <u>Aspen Am. Ins. Co</u>, 65 F.4th at 1265-72.

Plaintiffs' Complaint brings a negligence claim (Count IV) and bailment claim (Count VI) against Defendant specifically as a broker[8] alleging that, to the extent Defendant acted as a broker with respect to the shipment, it acted negligently in hiring Wizard Equipment to transport the shipment or is otherwise vicariously liable for Wizard Equipment's loss of the shipment.  (Doc. No. 7 ¶¶ 69-82, 99-108).  To the extent Defendant acted as a broker, these claims fall within Defendant's services as a broker "by challenging the adequacy of care the company took—or failed to take—in hiring" Wizard Equipment to transport the goods.  <u>Mays</u>, 2024 WL 332917, at *4 (quoting <u>Ye</u>, 74 F.4th at 459).  Plaintiffs cite to out-of-district cases for their position that these

---

[8] The Court observes that it is not entirely clear whether Plaintiffs bring the bailment claim against Defendant in its role as an alleged carrier or as an alleged broker.  Plaintiffs' briefing apparently concedes that they intend to bring the bailment claim against Defendant as a broker, stating "Plaintiffs have alleged three causes of action against the Defendant in the Defendant's claimed role as a freight broker." (Doc. No. 15 at 16).  To the extent the claim is brought against Defendant as a broker, it is preempted under the FAAAA.  <u>See also</u> Quality One Wireless, LLC v. MPR Assembly & Logistics Srvs., LLC, No. 6:22-cv-1212-RBD-LHP, 2023 WL 9062903, at *3 (M.D. Fla Jan. 18, 2023) ("DSV is correct in labeling this allegation as a bailment obligation equal to accepting legal responsibility for transport of Q1's cargo—making it a carrier.").  To the extent that Plaintiffs bring the bailment claim against Defendant as a carrier, the claim also is preempted. <u>Ecuadorian Rainforest, LLC v. TForce Freight, Inc.</u>, No. 22-cv-01856 (KSH) (ESK) 2022 WL 6967015, at *3 (D.N.J. Oct. 12, 2022) (dismissing, among others, breach of bailment claim because it was preempted by the Carmack Amendment).

claims are not preempted.[9]  However, the cases that Plaintiffs cite conflict with precedent in this District as well as cases from other circuit courts and out-of-district cases that align with the same reasoning.  Mays, 2024 WL 332917, at *3-4; Ye, 74 F.4th at 457-66; Aspen., 65 F.4th at 1265-72; see also Loyd v. Salazar, 416 F. Supp. 3d 1290, 1295-1300 (W.D. Ok. Sept. 20, 2019); Creagan v. Wal-Mart Transp., LLC, 354 F. Supp. 3d 808, 812-14 (N.D. Oh. 2018).

Allowing these claims to go forward would "impermissibly 'regulate brokers, not in their capacity as members of the public, but in the performance of their core transportation-related services.'"  Mays, 2024 WL 332917, at *4 (quoting Aspen Am. Ins. Co., 65 F.4th at 1268).  The claims also do not fall under the safety exception considering the language of the statute and Defendant's role as a broker.  Ye, 74 F.4th at 460-64; Mays, 2024 WL 332917, at *3-4; Aspen Am. Ins. Co., 65 F.4th at 1270-72; 49 U.S.C. § 14501(b)(1).  Thus, the undersigned concludes, consistent with precedent in this District, that these claims are preempted by the FAAAA, and respectfully recommends that Defendant's Motion to Dismiss Plaintiffs' negligence claim (Count IV) and bailment claim (Count VI) against Defendant as a broker be granted.

### 3.  Breach of Contract Claim Against Defendant as Broker (Count V)

Plaintiffs assert an alternative breach of contract claim against Defendant as a broker (Count V).  Defendant's argument seems to be that Plaintiffs' breach of contract claim against it as a broker (Count V) fails because Plaintiffs did not identify the express terms of the agreement

---

[9] Plaintiffs cite the following cases: Dilts v. Penske Logistics, LLC, 769 F.3d 637, 643 (9th Cir. 2014); Freightliner Custom Chassis Corp. v. Landstar Ranger Inc., No. 8:20-CV-1390 (FJS/CFH), 2022 WL 252390 (N.D.N.Y. Jan 27, 2022); Covenant Imaging, LLC v. Viking Rigging & Logistics, Inc., No. 3:20-CV-00593 (KAD), 2021 WL 973385 (D. Conn. Mar. 16, 2021); Factory Mut. Ins. Co. v. One Source Logistics, LLC, No. LA CV16–06385 JAK (JPRx), 2017 WL 2608867 (C.D. Cal. May 5, 2017); Winn Dixie Stores, Inc. v. Aspen Transp., LLC, No. 6:13–cv–791–Orl–31GJK, 2013 WL 4780125 (M.D. Fla. Sept. 5, 2013); Works v. Landstar Ranger, Inc., No. CV 10–1383 DSF (OPx), 2011 WL 9206170 (C.D. Cal. Apr. 13, 2011).

or otherwise attach said contract. (Doc. No. 14 at 4, 9). In addition, Defendant suggests that Plaintiffs' references to "due diligence and care" are tort-based concepts and "Plaintiffs make no allegation that the source of these duties can be found in any contract." Id. at 4.

Plaintiffs cite to North Carolina law with respect to the breach of contract claim, but neither party analyzes why North Carolina law applies. Federal courts generally apply the choice of law rules of the forum state. Baker v. Antwerpen Motorcars Ltd., 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011) ("In a federal question case that incorporates a state law issue, such as contract formation, a district court applies the choice-of-law rules of the state in which it sits unless a compelling federal interest directs otherwise." (citing Johnson v. Carmax, Inc., No. 3:10–CV–213, 2010 WL 2802478, at *2 (E.D. Va. July 14, 2010)); Riesett v. W.B. Doner & Co., 293 F.3d 164, 173 n.5 (4th Cir. 2002) (citing Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941)); (Doc. No. 7 ¶¶ 12-13). As such, North Carolina choice of law principles apply to determine which state law governs the breach of contract claims in this case. "[D]etermining what law applies to a particular claim is often a fact-intensive undertaking" and may require "the benefit of discovery." M.D. Russell Contr., Inc. v. Consolidated Staffing, Inc., No. 22-1420, 2023 WL 8798086, at *3 (4th Cir. Dec. 20, 2023).

Plaintiffs' Complaint alleges that a contract existed with Defendant to arrange for the transportation of wireless devices from Texas to Florida, and Defendant breached the terms of that contract through its selection of an unqualified third-party to transport the wireless devices, causing PCS suffer damages. (Doc. No. 7 ¶¶ 83-98). Considering these factual allegations, the undersigned finds that Plaintiffs sufficiently state a breach of contract claim against Defendant as a broker. One Beacon Ins. Co. v. United Mech. Corp., 700 S.E.2d 121, 124 (N.C. Ct. App. 2010) (outlining the elements for a breach of contract claim, including (1) the existence of a valid

contract; and (2) breach of the terms of that contract); Henderson v. Garcia Motorrad, LLC, 789 S.E.2d 569, 569 (N.C. Ct. App. 2016) (table decision). In addition, the undersigned rejects Defendant's arguments that failure to attach the contract or enumerate its content is somehow fatal to Plaintiffs' claim because Plaintiffs have sufficiently alleged facts to support the existence of a valid contract and a material breach. MCI CIF, LLC v. Soprema, Inc., No. 3:15-CV-00534-RJC-DSC, 2016 WL 828631, at *2 (W.D.N.C. Feb. 2, 2016), Mem. & R. Adopted, No. 3:15-CV-534-RJC-DSC, 2016 WL 830868 (W.D.N.C. Mar. 3, 2016) ("There is no rule which requires a plaintiff to set forth in his complaint the full contents of the contract which is the subject matter of his action or to incorporate the same in the complaint by reference to a copy thereof attached as an exhibit.") (quoting City of Wilmington v. Schutt, 45 S.E.2d 364, 366 (N.C. 1947)); Cantrell v. Woodhill Enters., Inc., 273 N.C. 490, 160 S.E.2d 476, 481 (1968).[10] For these reasons, Plaintiffs' Complaint sufficiently states a claim for breach of contract, and Defendant's arguments otherwise fall short at this early stage.

Further, as Defendant recognizes, the FAAAA does not preempt breach of contract claims against brokers because they are "privately ordered obligations" rather than a state's efforts to "enforce a law, regulation, or other provision . . . to a [broker's] price, route, or service." Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 228 (1995) (considering preemption under the Airline Deregulation Act); 49 U.S.C. § 14501(c)(1); Hartford Fire Ins. Co. v. Dynamic Worldwide

---

[10] Even if Florida or Texas law were to substantively apply rather than North Carolina, Plaintiffs also have plausibly stated a breach of contract claim. See Doe v. Roe, No. 17-23333, 2018 WL 4698886, at *7 (S.D. Fla. Sept. 29, 2018); Coim USA Inc. v. Sjobrand Inc., 663 F. Supp. 3d 684, 687-88 (N.D. Tex. 2023); Spirax Sarco, Inc. v. SSI Engineering, Inc., 122 F. Supp. 3d 408, 416 (E.D.N.C. 2015).

Logistics, Inc., No. 17–553–SDW–LDW, 2017 WL 3868702, at *3 (D.N.J. Sept. 5, 2017); Custom Stud, Inc. v. Meadow Lark Agency, Inc., 566 F. Supp. 3d 950, 954-55 (D. Minn. 2021).[11]

Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiffs' breach of contract claim (Count V) against Defendant as a broker be denied.

## IV.    RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendant's Motion to Dismiss Amended Complaint (Doc. No. 13) be **GRANTED IN PART** and **DENIED IN PART**.  Specifically, the undersigned respectfully recommends:

- Defendant's Motion be **GRANTED** with respect to Count II (breach of contract as carrier), Count III (vicarious liability as carrier), Count IV (negligence as broker), and Count VI (bailment); and

- Defendant's Motion be **DENIED** with respect to Count I (Carmack Amendment) and Count V (breach of contract as broker).

## V.    TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same.  Failure to file objections to this Memorandum with the Court

---

[11] Defendant devotes some of its brief to arguing potential preemption where there is a breach of implied covenants.  Northwest, Inc. v. Ginsberg, 572 U.S. 273, 286-88 (2014) (considering preemption under Airline Deregulation Act and outlining the contours of preemption with regard to implied covenants, but reaffirming its prior holding in Wolens).  Having said this, any arguments that Defendant has as to the obligations under the contract or how Plaintiff's breach of contract claim would ultimately play out are premature.  Wolens, 513 U.S. at 234 (rejecting a similar argument where the "question of contract interpretation has not yet had a full airing").  This is unlike the carrier claims and other broker claims where preemption is clearly mandated from the face of the Complaint.

constitutes a waiver of the right to de novo review by the District Judge.  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315-16 (4th Cir. 2005).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Id.  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel, and the Honorable Judge Kenneth D. Bell.

**SO RECOMMENDED**.

Signed: May 10, 2024

Susan C. Rodriguez
United States Magistrate Judge